IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| LASHAWN GREER, a parent and next friend of JOHN DOE, a minor, </br>   Plaintiff, </br></br> v. </br></br> MICHAEL LYNCH, WILLIE AKERSON, BRUCE BORUM, DANIEL TATE, and NURSE GINA HATCHETT, and the COUNTY OF COOK, </br>   Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | No: 15 CV 2550 </br></br> Judge Dow </br></br> Magistrate Judge Rowland </br></br></br> **JURY DEMANDED** |

## FIRST AMENDED COMPLAINT

NOW COMES the Plaintiff LASHAWN GREER, a parent and next friend of JOHN DOE, a minor, through her attorneys, ERICKSON & OPPENHEIMER, LTD., and for complaint against the Defendants, MICHAEL LYNCH, WILLIE AKERSON, BRUCE BORUM, DANIEL TATE, NURSE GINA HATCHETT, and the COUNTY OF COOK, and in support thereof states as follows:

### INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983 and the laws of the State of Illinois to address deprivations of Plaintiff's rights under the Constitution of the United States and the State of Illinois.

### JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985; the judicial code 28 U.S.C. §§ 1331 and 1343(a); the Constitution of The

United States; and pendent jurisdiction as provided under U.S.C. § 1367(a).

## PARTIES

3. John Doe is a minor and was a minor at the time of this incident. John Doe is a United States citizen who resided in the Northern District of Illinois at the time of this incident.

4. LaShawn Greer is the minor's mother and next friend. LaShawn Greer is a United States citizen and resides in the Northern District of Illinois.

5. Defendants Michael Lynch, Willie Akerson, Bruce Borum, and Daniel Tate were, at the time of this occurrence, Cook County Juvenile Detention employees. They engaged in the conduct complained of while on duty and in the course and scope of their employment and under color of law.

6. Defendant Hatchett was at all relevant times a nurse licensed to practice medicine in the State of Illinois and at all times relevant hereto an employee or agent of Cook County who worked at the Cook County Juvenile Detention Center. She was responsible for the evaluation, medical care, treatment, and welfare of the Plaintiff while he was at the Cook County Juvenile Detention Center on the date of the incident. As such, Defendant Hatchett was acting under the color of law and within the scope of her employment at all relevant times.

7. At all relevant times, Defendant County of Cook was the employer and principal of the individual defendants.

## BACKGROUND FACTS

8. On or about September 28, 2014, Plaintiff was a fifteen year-old resident at the Cook County Juvenile Detention Center in Chicago, Illinois.

9. The young teenager was seated in a chair in the TV room when a playful dispute arose between Plaintiff and another boy over who owed who snacks.

10. The boys resolved the playful dispute with laughter and a hug.

11. Despite this peaceful resolution, Defendant Lynch became angry and ordered both boys to their rooms.

12. The other boy complied while Plaintiff remained seated in his chair.

13. At about 9:21 a.m., without provocation and while the fifteen year-old boy remained seated, Defendant Lynch lifted the rail-thin boy off his chair and in an arcing motion viciously body-slammed him --upper body first-- into the ground.

14. Defendant Lynch's actions caused Plaintiff to hit his head on a chair before landing on the floor.

15. Once on the floor, Defendant Lynch pressed his significant, 210 lb. body on top of the young, thin boy causing the teen to lose consciousness.

16. Defendants Akerson and Borum were present in the area and observed Defendant Lynch grab Plaintiff and slam him to the ground.

17. As Plaintiff remained unconscious and still on the floor, Defendant Lynch walked towards the console area, but failed to pick up the telephone to call for assistance.

18. Defendant Akerson tapped Plaintiff on the shoulder repeatedly as he lay still and unconscious, and Plaintiff did not show any signs of responsiveness.

19. Defendant Lynch returned to the Plaintiff and smacked Plaintiff in the face. Again, Plaintiff did not show any signs of responsiveness.

20. Defendant Borum stepped over the Plaintiff where he was laying on the floor to enter the TV area.

21. While Plaintiff was unresponsive, Defendant Lynch then lifted Plaintiff by the arm.

22. A short time later, Defendant Akerson then assisted by lifting Plaintiff's other arm.

23. As Plaintiff remained unconscious and unresponsive, Defendants Lynch and Akerson dragged the limp, unresponsive Plaintiff a distance of approximately 90 feet to the Plaintiff's room with Plaintiff's legs trailing behind him.

24. Defendant Tate was present and observed Defendants Lynch and Akerson dragging Plaintiff who was unconscious.

25. Despite this observation, Defendant Tate took no action to intervene or obtain medical attention for Plaintiff and instead allowed Defendants Lynch and Akerson to continue dragging Plaintiff to his room.

26. As they approached Plaintiff's room and as Plaintiff remained unconscious, Defendants Lynch and Akerson laid Plaintiff on the floor outside of his door while they opened his door.

27. Defendants Lynch and Akerson then again picked up the unconscious Plaintiff by his arms and dragged him into his room.

28. Plaintiff was unconscious for approximately 10-15 minutes.

29. At approximately 9:40 a.m., about 20 minutes after Defendant Lynch's attack caused Plaintiff to lose consciousness, Defendant Lynch finally notified Defendant Nurse Hatchett that Plaintiff required medical attention for a head injury.

30. At no time prior to this notification had Defendants Lynch, Akerson, Borum, and Tate taken any action to obtain the appropriate medical treatment for Plaintiff.

31. Defendant Lynch falsely advised Nurse Hatchett that Plaintiff had fallen and hit his head when he was restrained by him.

32. Defendant Hatchett arrived at Plaintiff's room where Plaintiff advised her that he had "passed out." Plaintiff also complained of an eye twitch as well as pain to his head, shoulder, and knee.

33. Defendant Lynch remained in the room during the entire time Defendant Nurse Hatchett spoke with Plaintiff.

34. Despite having been advised by Plaintiff that he lost consciousness, Defendant Nurse Hatchett falsified Plaintiff's medical records to indicate that Plaintiff denied loss of consciousness and treated Plaintiff by simply giving him an ice pack.

35. In an effort to conceal his failure as well as the failure of Defendants Borum, Akerson, and Tate to follow protocol and obtain the necessary medical attention for Plaintiff in a timely manner, Defendant Lynch falsified his incident report to note that the incident with Plaintiff had occurred at 9:40 a.m., immediately prior to when Defendant Lynch notified Defendant Hatchett of Plaintiff's need for medical attention.

36. Because of Defendants' actions as set forth above, Plaintiff was not referred to the emergency room until 11:30 a.m.

37. Plaintiff was eventually taken by ambulance to Stroger Hospital and arrived there, boarded and collared, at approximately 1:01 p.m., more than 3 and ½ hours after his injury.

38. Plaintiff was diagnosed with blunt head trauma as well as tenderness and bruising over his right eye. He was kept in the hospital overnight and continues to suffer headaches and pain.

39. In statements to investigators following this incident, Defendant Lynch repeatedly obstructed the investigation and lied about how Plaintiff was injured, including without limitation:

    i. Falsely stating that Plaintiff was standing rather than seated when Lynch initiated his physical restraint;

    ii. Falsely stating that Plaintiff tried to attack another resident, causing Lynch to initiate a physical restraint technique;

    iii. Falsely stating that Plaintiff slipped through Lynch's arms and fell down;

    iv. Falsely stating that he never observed Plaintiff hit his head and lose consciousness;

    v. Falsely stating that Plaintiff was responsive and engaged in conversation with him almost immediately after he was on the ground;

40. In statements to investigators following this incident, Defendant Akerson also repeatedly obstructed the investigation and lied about how Plaintiff was injured, including without limitation:

    i. Falsely stating that Plaintiff had fallen when he pulled away and resisted Lynch's physical restraint technique;

    ii. Falsely stating that Plaintiff was responsive, grinning, smiling, and engaged in conversation with him almost immediately after he was on the ground;

6

      iii. Falsely stating that Plaintiff stood and walked to his room;

      iv. Falsely stating that Plaintiff engaged in conversation with him on the way to his room;

41. Two hours after the incident was brought to the attention of investigative staff and an investigation was opened, Defendant Akerson obstructed the investigation and made a late entry after 12:00 p.m. in the logbook falsely stating that the incident had occurred at 9:40 a.m. and that Plaintiff had sustained his injury by falling to the ground after struggling with Lynch and resisting Lynch's physical restraint technique.

42. Defendant Akerson's entry also falsely noted that Plaintiff initially appeared unresponsive, but was conscious approximately 10 seconds later. This statement is clearly contradicted by video footage capturing the incident.

43. In statements to investigators following this incident, Defendant Borum obstructed the investigation and lied about this incident by denying that he witnessed the physical restraint technique used by Lynch on Plaintiff despite the fact that video surveillance footage shows him present in the area and watching as Lynch grabbed Plaintiff and slammed him to the ground.

44. Defendant Borum also submitted incomplete and misleading reports regarding this incident as his initial report stated simply that he observed two staff attempting to escort Plaintiff to his room.

45. It was not until the following day, after an internal investigation had already been opened regarding this incident, that Defendant Borum completed a supplemental report clarifying

7

the nature of the escort where an additional line stated that Plaintiff did not appear responsive.

46. On or about March 19, 2015, Defendant Lynch pled guilty to aggravated battery and official misconduct and received a sentence of two years probation.

47. On information and belief, Defendants Akerson and Borum are on administrative leave.

## COUNT I
## EXCESSIVE FORCE - 42 U.S.C. § 1983 (against Defendant Lynch)

48. All previously pled paragraphs are restated and re-alleged herein.

49. The actions of Defendant Lynch constituted unreasonable, unjustifiable, and excessive force against Plaintiff, thus violating his rights under the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

50. As a proximate result of the above-detailed actions of Defendant Lynch, Plaintiff suffered injuries, including without limitation loss of liberty, physical harm and pain, emotional distress and anguish, and financial damages.

51. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

52. Defendant Lynch acted under color of law and within the scope of his employment.

WHEREFORE Plaintiff prays for judgment against Defendant Lynch in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus a sum in punitive damages as well as costs, attorney's fees and such other relief as is just and equitable.

## COUNT II
## BATTERY (against Defendant Lynch)

53. Plaintiff restates and re-alleges all previously pled paragraphs.

54. The conduct of the Defendant constituted an unauthorized touching of the Plaintiff by the Defendant.

55. Defendant Lynch's conduct that resulted in this battery was malicious, willful, and wanton.

56. As a proximate result of the above-detailed actions of Defendant Lynch, Plaintiff suffered injuries, including physical harm and pain, emotional distress and anguish, and financial damages.

WHEREFORE, Plaintiff demands judgment be entered in his favor and that he be awarded compensatory damages, costs and expenses and such other and further relief that this Honorable Court deems just.

## COUNT III
## FAILURE TO PROVIDE MEDICAL CARE - 42 U.S.C. § 1983 (against Defendants Lynch, Borum, Akerson, and Tate)

57. Plaintiff restates and re-alleges all previously pled paragraphs.

58. Plaintiff had a serious medical injury in that he had suffered trauma to his head causing him to lose consciousness.

59. Defendants were aware that Plaintiff had a serious injury and had lost consciousness.

60. Defendants Lynch, Borum, and Akerson were further aware that Plaintiff may have also suffered a spinal injury due to the manner in which he was slammed to the ground.

61. Despite his awareness of Plaintiff's condition, Defendant Lynch allowed at least 20 minutes to elapse before calling for medical attention.

62. Despite their awareness of Plaintiff's condition, Defendants Borum, Akerson, and Tate took no action to call for medical attention, causing Plaintiff damages, including without limitation pain and suffering.

   WHEREFORE Plaintiff prays for judgment against Defendants Lynch, Borum, Akerson, and Tate, jointly and severally, in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus a sum in punitive damages as well as costs, attorney's fees and such other relief as is just and equitable.

## COUNT IV
## DELIBERATE INDIFFERENCE - 42 U.S.C. § 1983 (against Defendant Hatchett)

63. Plaintiff restates and re-alleges all previously pled paragraphs.

64. Defendant Hatchett, at all relevant times hereto, was responsible for providing residents, including the Plaintiff, with adequate medical care at the Cook County Juvenile Detention Center.

65. Plaintiff, at all relevant times hereto, was a resident of the Cook County Detention Center and was subject to Defendant's medical services.

66. As described above, Defendant failed to provide Plaintiff with proper medical care although she had notice and/or actual knowledge that Plaintiff had sustained head trauma resulting in loss of consciousness, thereby suffering from an objectively serious medical condition, and that Plaintiff might suffer great harm if additional medical services were not provided.

67. Despite her awareness that Plaintiff had lost consciousness, Defendant Hatchett falsified her medical records to note to the contrary and failed to refer Plaintiff to a hospital for appropriate evaluation and treatment.

68. As a nurse with medical training, Defendant Hatchett was aware that head trauma resulting in loss of consciousness necessitated more evaluation and treatment than the ice pack she provided.

69. Defendant Hatchett knew that there was a substantial risk of harm to Plaintiff due to the nature of Plaintiff's injury as reported to her by Plaintiff, yet she failed to take necessary action to procure appropriate care in disregard of that risk.

70. Defendant Hatchett knowingly and unreasonably disregarded the significant risk of harm to Plaintiff's health and safety by failing to provide adequate medical care in violation of the rights afforded to him by the United States Constitution.

71. Defendant's actions and inactions as described herein were objectively unreasonable and constituted deliberate indifference to the Plaintiff's objectively serious medical needs.

72. As a direct result of the actions and inactions of Defendant and her deliberate indifference to Plaintiff's serious medical needs as described herein, Plaintiff suffered damages as set forth hereto.

WHEREFORE Plaintiff prays for judgment against Defendant Hatchett in a fair and just amount sufficient to compensate him for the injuries he has suffered, plus a sum in punitive damages as well as costs, attorney's fees and such other relief as is just and equitable.

## COUNT V
## INDEMNIFICATION- COUNTY OF COOK

73. All previously pled paragraphs are restated and re-alleged herein.

74. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

75. The individual defendants were at all relevant times employees of Defendant County of Cook and acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, should any of the individual defendants be found liable on one or more of the federal claims alleged above, Defendant County of Cook would be liable to pay the Plaintiff any judgment obtained against said Defendants.

## COUNT VI
### *RESPONDEAT SUPERIOR* –COUNTY OF COOK

76. Each paragraph of this Complaint is incorporated as if restated fully herein.

77. In committing the acts alleged in the preceding paragraphs, Defendant Lynch was a member and agent of the County of Cook and was acting at all relevant times within the scope of his employment and under color of law.

78. Defendant County of Cook is liable as principal for all torts committed by its agents.

WHEREFORE, should Defendant Lynch be found liable on one or more of the state law claims set forth above, Plaintiff demands that pursuant to *respondeat superior*, Defendant County of Cook be found liable for any compensatory judgment Plaintiff obtains against said Defendant, as well as attorneys' fees and costs awarded.

## JURY DEMAND

Plaintiff demands a trial by jury.

## NOTICE OF ASSIGNMENT

Please be advised that all rights relating to attorneys' fees have been assigned to counsel.

Respectfully submitted,

/s/ Jon F. Erickson
Jon F. Erickson

Erickson & Oppenheimer, Ltd.
118 S. Clinton, Suite 200
Chicago, IL 60661
312-327-3370